## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cr-30049 |
| | ) | |
| QUENTIN LUCAS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Quentin Lucas' Pretrial Motions (d/e 17) (Motion).  Lucas is charged with the crime of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Indictment (d/e 4).  On December 3, 2013, the Court held an evidentiary hearing on the Motion.  The Government appeared by Assistant United States Attorney Bryan Freres.  The Defendant appeared in person and by his attorney Michael J. Costello.  After careful consideration of the submissions of the parties, the evidence adduced at the hearing, the arguments of counsel, and the applicable law, the Court recommends that the Motion should be DENIED.

## STATEMENT OF FACTS[1]

The Government presented the testimony of Illinois State Troopers Dustin Weiss and Steven Ent, and Drug Enforcement Administration (DEA) Special Agent Scott Giovannelli.  Lucas testified for the defense.[2]  The Government also played the audio visual recording of a portion of the relevant December 3, 2012, traffic stop.  The recording was made by the recording equipment in Trooper Weiss' vehicle and on his person.  The evidence presented established the following.

Trooper Weiss was assigned to the DEA as a Task Force Officer.  He patrolled the interstate highways seeking to interdict the transportation of illegal drugs.  On December 3, 2012, at about 10:30 a.m., Weiss was contacted by a detective in the Springfield, Illinois, Police Department (Department).  The Department detective informed Weiss that the Department was investigating a man named Andrew Craig for distribution of heroin.  The detective told Weiss that heroin had been purchased from Craig in the course of the investigation.  The detective told Weiss that Craig

---

[1] This Report and Recommendation has been prepared without the benefit of a transcript of the hearing.
[2] Before Lucas testified, Lucas' counsel confirmed that he explained to Lucas the risks of testifying and the potential use of his testimony at trial and otherwise.   The Court also engaged in a colloquy with Lucas to confirm that Lucas understood that his testimony could be used for impeachment in this proceeding, that his testimony could be used against him if he was charged with perjury based on his testimony, and that if the Court found that the testimony was not credible, an obstruction of justice enhancement could be applied at sentencing should he be convicted in this case, and that enhancement could increase the calculation of his sentencing guideline range.  Lucas testified that understood and wanted to testify.  The Court then allowed the testimony.

was traveling from Chicago, Illinois, to Springfield in a black Dodge Charger and could possibly be transporting heroin.  The detective told Weiss that Lucas would be traveling with Craig in the Charger.  The detective asked Weiss to stop the vehicle if Weiss established probable cause to stop it.

Weiss contacted Trooper Ent at about 11:00 a.m.  Ent handled a drug sniffing dog named Zyko.  Weiss asked Ent if he could be available on Interstate 72 (I-72) east of Springfield that morning to conduct a possible open air sniff of a vehicle with Zyko.  Ent agreed to come to the vicinity and be available.  Ent then drove to the requested area.

Weiss went to mile marker 122 on I-72 east of Springfield and parked in the median.  He observed a black Dodge Charger (Charger) heading west toward Springfield whose occupants matched the descriptions given by the Department detective.  Weiss followed the Charger in his patrol vehicle.  Weiss used a radar device to confirm that the Charger was traveling at a speed of 72 miles per hour.  The speed limit was 65 miles per hour.  Weiss turned on his flashing lights and pulled the Charger over. Weiss' camera and audio recording equipment came on automatically when he turned on the flashing lights.  Weiss could turn the audio on and off.  Weiss testified that he turned the audio off when he was not in the presence of any of the occupants of the Charger.

Weiss parked behind the Charger, exited his vehicle, and walked up to the passenger side of the Charger.  Craig was driving the Charger; Lucas was in the passenger seat.  A woman named Rayshana Grant was in the back seat with her baby.  Weiss told Craig that he was stopping him for speeding, but was only going to give him a warning.  Weiss collected Craig and Lucas' identification and returned to his vehicle to run checks on the car and the two men.

By the time Weiss returned to his vehicle, Ent was waiting for him. Ent parked his vehicle with his dog Zyko behind Weiss' vehicle.  Ent stood outside Weiss' car while Weiss ran the checks.  Weiss found that the vehicle was a rental vehicle.  It is undisputed that Craig rented the vehicle, not Lucas.  Weiss found that Craig and Lucas had criminal records.  Weiss also found that Lucas was subject to an order of protection.  An order of protection in Illinois is a restraining order directing a person not to be near or otherwise in contact with a specific family or household member being protected by the order.  An order of protection is issued when a court has found that the person subject to the order had abused or neglected the person protected by the order.  See 750 ILCS 60/214.

Weiss asked Ent to direct Craig to come back to Weiss' vehicle and to determine Grant's identity.  Weiss wanted to confirm that Grant and the

baby were not involved with the order of protection against Lucas.  Weiss wanted to confirm that Lucas was not violating the order of protection.

Craig came back to Weiss' patrol car and sat in the front passenger seat. Weiss testified that Craig was nervous throughout the incident. Craig's hands were sweaty.  Craig wiped his hands on this pant legs to remove the sweat.  Craig also nervously bounced his knee up and down. Weiss questioned Craig about the identity of the woman.  Weiss was able to confirm that she and her baby were not involved in the order of protection against Lucas.

Ent asked Craig about his trip while Weiss prepared the warning. Craig said that he was giving Lucas and Grant a ride to Springfield.  Craig said at one point that they were going to stay with him for a week.  He later said that he was going to drive them back to Chicago after a couple of days.  Craig was also asked about his criminal history.  Craig admitted serving time for a drug trafficking conviction.

Weiss completed the warning and gave it to Craig.  Weiss told Craig that he was free to go.  The total duration of the stop at this point was approximately twelve to fifteen minutes.  At this point, Weiss' recording equipment malfunctioned and ceased operating.  Weiss testified that he had been having trouble with the equipment.

After Weiss told Craig he was free to go, Weiss asked him if he could ask Craig a couple of questions. Craig said, "What's that?" Weiss asked Craig if he had anything illegal in the car. Craig said no. Weiss asked if he could search the car. Craig said no. Weiss told Craig that Trooper Ent was going to perform an open air sniff of the car with his dog Zyko. Ent testified that he asked the passengers to step out of the vehicle and performed the open air sniff. Lucas testified that Ent removed him from the car, searched him, handcuffed him, and placed him in Ent's vehicle before conducting the sniff.

Ent then conducted the open air sniff with the dog. The dog walked around the vehicle and alerted on the passenger side of the vehicle. The alert indicated the presence of cannabis, cocaine, crack cocaine, methamphetamine, or heroin. Once the dog alerted, Weiss told Craig that they were going to search the Charger.

Weiss testified that four minutes elapsed from the time that he told Craig that Ent was going to conduct the sniff to the time that Ent started the sniff. Weiss testified that the sniff took a minute or less before the dog alerted. Lucas testified that twenty to thirty minutes elapsed from the stop until the Ent and the dog started the sniff.

The officers did not find any drugs in the Charger, but they found a loaded handgun in the trunk.  Craig and Lucas both denied that the gun belonged to them.  The officers then arrested Craig and Lucas and took them both to the DEA officers in Springfield.  The officers arrested Lucas for felon in possession of a weapon in violation of Illinois law.  Weiss testified that he did not participate any further in the investigation.

DEA Agent Giovannelli and Department Detective Grant Barksdale were waiting at the DEA office.  Giovannelli and Barksdale put Craig, Lucas, and Grant in separate interview rooms.  Giovannelli testified that Craig was the target of the Department's investigation.  Giovannelli was there to assist the Department; he testified that the DEA was not investigating Craig.

Giovannelli testified that he and Barksdale interviewed Lucas.  Giovannelli testified that he read Lucas his <u>Miranda</u> rights off an official DEA sheet and asked him if he understood his rights.  Giovannelli testified that Lucas acknowledged that he understood his rights.  According to Giovannelli, he and Barksdale questioned Lucas after he acknowledged that he understood his rights.  Giovannelli described Lucas as cooperative and "kind of laid back" during the interview.  Lucas told them that he was coming to Springfield to enroll in school.  He stated that he did not know

that Craig was involved in illegal drugs.  He admitted that the gun was his. Lucas did not hesitate in admitting that the gun belonged to him.

Giovannelli testified that the interview took about fifteen minutes.  He testified that Lucas was not threatened and was not promised anything.  He testified that Lucas never asked them to stop the interview and never asked them for an attorney.  Giovannelli testified that Lucas showed no signs of any duress during the interview.  Giovannelli testified that he told Lucas that the officers would let the prosecutor know if he provided any information that would be helpful with the investigation of Craig.

Lucas testified that Giovannelli, Weiss, and a third man interviewed him in two sessions.  In the first session, Lucas told the officers that he did not know Craig was a drug dealer.  Lucas stated that Craig was a family friend.  Lucas testified that he told the officers that he came to Springfield to enroll in college.  Lucas testified that he denied owning the handgun found in the trunk.  He testified that he told the officers, "If you are going to charge me then charge me."  Lucas testified that he told the officers that, "he didn't have nothing more to talk about."

Lucas testified that the three officers left and then came back ten to fifteen minutes later for a second interview.  Lucas testified the officers told him that the charges against him would stick because he was on parole.

Lucas testified that the officers told him his best bet was to cooperate because he was on parole and to tell the officers everything he knew about Craig's involvement with illegal drugs. Lucas testified that he then told the officers that the handgun was his. Giovannelli testified that he did not know that Lucas was on parole.

Lucas testified that he was read his <u>Miranda</u> rights. He testified that he "kind of" understood his rights. He testified that his rights had never been read to him before. He acknowledged that he had been convicted in 2008 and 2012 on drug charges. He testified that officers of the Chicago, Illinois, Police Department had arrested him on both of those occasions, but he was never read his rights either time.

On cross examination, Lucas testified that he was not read his <u>Miranda</u> rights at the beginning of the interview. At one point on cross, Lucas testified that he was read his rights after he told the officers that the gun was his. Later on cross examination, Lucas testified that he was read his <u>Miranda</u> rights and then he told the officers that the gun was his.

Lucas admitted at the hearing that he owned the gun and had placed it in the trunk of the Charger. Lucas testified that he knew he should not have been in possession of a weapon. He testified that he had just been released from prison, and he thought he would be able to stay out of

trouble better if he left Chicago.  He testified that he brought the gun with him for protection.  He testified that he came to Springfield to enroll at Lincoln Land Community College.  He testified that he had a cousin who lived in Springfield.

ANALYSIS

Lucas challenges the length of the detention at the traffic stop, the search of the Charger, and the voluntariness of his statements in his interview.  Lucas conceded at the hearing that Weiss had probable cause to stop the vehicle for speeding.  Lucas argues that Weiss and Ent improperly detained him to conduct the open air sniff, and did not have a proper basis to search the vehicle.  Lucas also challenges the voluntariness of his statements at the interview.  The Government challenges whether Lucas had a reasonable expectation in privacy in the Charger sufficient to give him standing to raise a Fourth Amendment challenge to the search.

Defendant Lucas must have had a reasonable expectation of privacy in the items seized and the area searched to raise a Fourth Amendment challenge.  United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006). He has the burden of proof on this issue.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).  Defendant Lucas must show that he had a subjective

expectation of privacy and that the expectation must be one that society is prepared to recognize as objectively reasonable.  United States v. Garcia, 897 F.2d 1413, 1418 (7th Cir. 1990).

The Seventh Circuit has held that a person who is a passenger in a vehicle rented or owned by someone else does not have a reasonable expectation of privacy in the vehicle.  United States v. Walker, 237 F.3d 845, 849 (7th Cir. 2001); United States v. Price, 54 F.3d 342, 345-46 (7th Cir. 1995); Garcia, 897 F.2d at 1418.  Based on these precedents, Lucas did not have a reasonable expectation of privacy in the Charger and so did not have standing to raise a Fourth Amendment challenge to the search.

Lucas cites Pennsylvania v. Mimms, 434 U.S. 106 (1997) (per curiam), for the proposition that he has standing.  The Mimms case upheld the frisk of the driver at a traffic stop.  Mimms, 434 U.S. at 108-11.  The dissent in Mimms discussed the rights of a passenger at a traffic stop to challenge the search of his person.  Mimms, 434 U.S. at 122 (Stevens, J., dissenting).  The Mimms case does not hold that a passenger has a reasonable expectation of privacy to challenge a search of the vehicle. Subsequent decisions such as Walker, Price, and Garcia, show that the Mimms decision cannot be extended to give a passenger standing to

challenge a search of a vehicle.  Therefore, Lucas' challenge to the search of the Charger fails.

Lucas, however, argues that the detention was illegal, and therefore, the search was illegal.  The Court finds no impropriety in the detention in this case.  An officer can properly stop an automobile if the officer has probable cause to believe that the driver committed a traffic violation. United States v. Bueno, 703 F.3d 1053, 1059 (7th Cir. 2013); cert. granted and judgment vacated on other grounds sub nom. Gonzalez-Zavala v. United States, __ U.S. __, 133 S.Ct. 2830 (2013).  The officer's subjective motivation is irrelevant.  United States v. Hernandez-Rivas, 348 F.3d 595, 599 (7th Cir. 2003).  In this case, Trooper Weiss had probable cause to believe that the Charger was speeding.  He used his radar device to determine that the Charger was traveling 72 miles per hour when the speed limit was 65 miles per hour.  The stop was valid.

An officer conducting a traffic stop may reasonably detain the occupants of a vehicle long enough to conduct the stop.  United States v. Muriel, 418 F.3d 720, 726 (7th Cir.2006).  When the officers have reasonable suspicion that a vehicle may be involved in other criminal activity, the officers may detain the vehicle for additional time in order to

conduct a reasonable investigation.  See United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005).

In this case, Weiss detained the vehicle for approximately fifteen minutes to conduct the traffic stop and investigate the outstanding order of protection against Lucas.  This was clearly proper and reasonable.  Weiss then told Craig he was free to go.  The traffic stop and investigation of the order of protection was completed.  Weiss asked Craig for consent to search the vehicle.  When Craig refused to give consent, Weiss detained him, Lucas, and Grant for four or five minutes to conduct the open air sniff.[3]

Weiss had reasonable suspicion to justify that brief, four to five minute detention.  Weiss knew that the Department was investigating Craig for distributing heroin.  Weiss knew that heroin been had purchased from Craig as a part of that investigation.  Weiss knew that the Department had information that Craig could possibly be bringing heroin from Chicago.  Craig was very nervous during the traffic stop.  Craig also changed his story about his passengers; he first said that they were staying with him for a week, but later said that they were staying only a few days.  Weiss believed the nervousness indicated that Craig might be hiding something in the Charger.  All of this information, taken together, provided Weiss with a

---

[3] Lucas' testimony that twenty to thirty minutes elapsed from the stop to the beginning of this sniff is consistent with this.  Fifteen minutes elapsed from the stop until Weiss told Craig he was free to go, and four to five minutes elapsed thereafter until the dog sniff started.

sufficient basis to conduct a four to five minute investigative detention.  The

Court notes that the open air sniff was not a search, but only part of the

brief investigation.  See Illinois v. Caballes, 543 U.S. 405, 409 (2005) (The

use of a dog in an open area outside of a vehicle does not implicate a

legitimate interest in privacy, and so, does not raise a Fourth Amendment

concern.).  The Court finds that this brief, four to five minute investigative

detention was reasonable.[4]  Once the dog alerted, the detention was

reasonable because the officers had probable cause to search the

Charger.  See Martin, 422 F.3d at 602.

Lucas testified that he was searched and handcuffed before the open

air sniff occurred.  Ent testified that he asked the occupants to exit the

vehicle; he did not testify that he searched Lucas or handcuffed him.

During the course of an investigative stop, officers may take reasonable

steps to protect themselves.  This may include pat down searches and, in

limited situations, restraining suspects in handcuffs while conducting the

investigation.  See e.g., United States v. Stewart, 388 F.3d 1079, 1084-85

(7th Cir. 2004); but see Rabin v. Flynn, 725 F.3d 628, 634 (7th  Cir. 2013)

---

[4] Even counting the traffic stop, the total detention from the initial stop to the time that the alert gave the
officers probable cause to search was twenty to thirty minutes.  Such detentions in connection with a
traffic stop have been found to be reasonable.  See e.g., Jewett v. Anders, 521 F.3d 818, 827 (7th Cir.
2008) (investigative detention of a vehicle for thirty to forty minutes was reasonable); Cady v. Sheahan,
467 F.3d 1057, 1063 (7th Cir. 2006) (investigative detention of a vehicle for twenty to thirty minutes was
reasonable).

("The proliferation of cases in this court in which '*Terry*' stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing, and we would caution law enforcement officers that the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop.") (quoting Ramos v. City of Chicago, 716 F.3d 1013, 1018 (7th Cir.2013)).

The claimed search and handcuffing, if true, would have been reasonable in this case. Weiss had determined that Lucas had a criminal record. The order of protection against Lucas indicated that he posed a risk of violence. Based on this information, Ent had some reasonable concern that Lucas could be dangerous. Lucas was being left unattended in Ent's vehicle. Under these circumstances, it was reasonable for officer safety to search Lucas for weapons and to restrain him for a few minutes while he was unattended in a state police vehicle during the investigation and then for the subsequent search.

Lucas last challenges the voluntariness of his statements. The Motion only challenges whether his statements were factually voluntary. Lucas concedes in his memorandum that he received his Miranda warnings and nowhere claimed that the officers failed to follow any requirement of

Miranda.  See Memorandum of Law in Support of Defendant's Pretrial

Motions (d/e 18), at 7.

Voluntariness is a factual issue.  Even when Miranda warnings are

given, due process requires that a confession must be voluntary.  United

States v. Vallar, 635 F.3d 271, 282 (7th Cir. 2011).  Voluntariness is

determined under the totality of the circumstances.  Coercive government

activity is necessary to render a statement involuntary.  The Vallar Court

explained,

> We have held that "[a] confession is voluntary if, in the
> totality of circumstances, it is the product of a rational intellect
> and free will and not the result of physical abuse, psychological
> intimidation, or deceptive interrogation tactics that have
> overcome the defendant's free will." *United States v. Gillaum,*
> 372 F.3d 848, 856 (7th Cir. 2004); *see also Schneckloth v.*
> *Bustamonte,* 412 U.S. 218, 226 (1973). "[C]oercive police
> activity is a necessary predicate to the finding that a confession
> is not 'voluntary' within the meaning of the Due Process Clause
> of the Fourteenth Amendment." *Gillaum,* 372 F.3d at 856; *see*
> *also United States v. Montgomery,* 555 F.3d 623, 632 (7th Cir.
> 2009). "[W]e analyze coercion from the perspective of a
> reasonable person in the position of the suspect." *United States*
> *v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001).

United States v. Vallar, 635 F.3d at 282.

Lucas presents no evidence of coercion or any other actions that

would have overborne the free will of a reasonable person in his position.

The interview was brief under either his version of the events or

Giovannelli's version.  Lucas testified that the officers told him he should

cooperate because he was on parole.  Giovannelli testified that the officers told him that they would let the prosecutor know if Lucas provided any information that would help the investigation of Craig's involvement with illegal drugs.   Either way, no evidence indicates any coercive activity or that Lucas' will was overborne.  Lucas' statements were voluntary.[5]

At the hearing, Lucas raised a claim for the first time in his testimony that he was not properly apprised of his <u>Miranda</u> rights.  Law enforcement officials conducting a custodial interrogation must inform the suspects of certain of their rights before conducting the interrogation, including the right to remain silent and that any statement may be used against him, and the right to the presence of an attorney.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  Once a suspect acknowledges that he understands his rights, the officials may question him unless he invokes his rights.  <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 387-88 (2010) ("Thus, after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights."); <u>see</u> <u>United States v. Lee</u>, 618 F.3d 667, 676 (7th Cir. 2010) (Willingness to answer questions, even in the absence of a signed waiver, can be viewed as impliedly waiving one's rights.).

---

[5] The Government argued at the close of evidence that Lucas had diminished rights because he was on parole.  This argument was not briefed by the parties, and the Court does not address it.

Lucas acknowledged to the officers that he understood his rights.
Lucas did not dispute this point in his testimony.  Rather, Lucas testified
that he only kind of understood his rights.  The Court finds that Lucas is not
credible on this point.  Lucas is an experienced criminal who has two prior
drug convictions.  His claim that no one informed him of his <u>Miranda</u> rights
before, or that he only "kind of" understood his rights, is not credible.

Lucas also testified on cross examination that the officers gave him
his <u>Miranda</u> warnings after he told them that the handgun belonged to him.
His testimony again is not credible.  Lucas did not raise this allegation in his
Motion.  His counsel did even not elicit this testimony on direct
examination.  If Lucas had confessed before he received his <u>Miranda</u>
rights, the Motion would have raised the issue front and center as a clear
violation of <u>Miranda</u>.  The Motion nowhere mentioned a violation of
<u>Miranda</u>.  The Motion, rather, conceded that the officers complied with
<u>Miranda</u>.

Lucas' testimony was also contradicted by Giovannelli and Weiss.
Giovannelli testified that he interviewed Lucas once for fifteen minutes, that
Weiss was not present, and that he gave Lucas his <u>Miranda</u> warnings
before any questioning began.  Weiss testified that he did not participate in

the interview. Lucas testified that he was interviewed twice and Weiss was present for both.

Lucas also contradicted himself. He testified once on cross examination that he confessed to owning the gun before he was given his Miranda warnings. Later on cross examination, he testified that he received his Miranda warnings and then he confessed. Given the internal inconsistencies in the testimony and the lack of any mention of a Miranda violation in the Motion, the Court finds that Lucas' testimony on this point is not credible. The Court finds that Giovannelli's testimony is credible and that Lucas received his Miranda warnings before the interview, and he acknowledged that he understood his rights before the questioning began.

Lucas also testified that he told the officers during the interview that he did not have anything else to say. This testimony is again not credible. A defendant may invoke his right to remain silent during the course of a custodial interrogation; if he does so, the interrogation must stop. Miranda, 384 U.S. at 445. Lucas testified that the officers may have violated this basic requirement of Miranda by continuing to question him after he told them that he did not have anything else to say. Yet, his Motion conceded that he received his Miranda warnings and nowhere alluded to any violation of Miranda's requirements. Lucas did not include this claim in the Motion

because no such violation occurred.  The Court finds Lucas again is not credible on this point.  The Court again credits Giovannelli's version of the facts.  Giovannelli testified that Lucas made no such statement.  In the brief fifteen minute interview, Lucas received the <u>Miranda</u> warnings and acknowledged that he understood them, he told the officers that he did not know about Craig's involvement in illegal drugs, and he admitted the gun in the trunk was his.  The Court finds that no violation of <u>Miranda</u> or the Fifth Amendment.

WHEREFORE this Court recommends that Defendant Quentin Lucas' Pretrial Motions (d/e 17) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation.  <u>See</u> 28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of objections on appeal. <u>See</u> <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1).

ENTER:  December 11, 2013


_____
  *s/ Byron G. Cudmore*
UNITED STATES MAGISTRATE JUDGE